And we'll hear the next case, the related case. You want to hear the argument on... Hold on, yeah. We'll set up. That's right. I forgot something there. Doing a little exchanging at the tables. Just hold on one second. Thank you. I didn't realize that. I was not thinking around it. Thank you. All right, Mr. DuPont. Yes, in this respect, Your Honor, we are dealing with the chauffeur's order, which I've referred to several times. And in this connection, we begin again with the issue that I was attempting to present in the first case, which also lands here, which is whether the protective order protects the land so that we can go forward with it. What orders of the district court are you appealing from in this appeal? Yes, in this appeal, Your Honor, what we're dealing with is the lower court's refusal to consider the Hegna's motion for summary judgment, establishing priority. That seems to be a... We have jurisdiction to hear the appeal from that refusal to decide a summary judgment motion. Well, it seems to me, Your Honor, the jurisdiction lies because the... Is it covered by the Rule 54 certification? I think it is covered by the concept of a collateral issue, which is necessary to be decided when you're attempting to decide the issue that's presented, which is the denial of summary judgment and the granting of summary judgment in the manner in which the district court proceeded. Denial of summary judgment ordinarily is not appealable. I agree, Your Honor. The refusal to consider summary judgment is ordinarily not appealable. It has to wait until the end of the litigation and be part of the final judgment, and then whatever happened in the process of getting there can be appealed. But here you have a Rule 54b appeal that was permitted on the innocent owner defense, correct? Yes, Your Honor. And only on the innocent owner defense. So there is no jurisdiction here. I don't agree that it was only on the innocent owner defense or that it was limited to that, Your Honor. In my effort to... Do you have the order granting the 54b certification? I believe I do, Your Honor. Is it in the appendix? Yes. What page would that be? We're looking at the same book here. This is the . . . This is 15 . . . We're in case 15 . . . 3007. 3007, and . . . I thought I put that in here. Yes, I think it's at . . . You need to speak into the microphone. I'm sorry. It's being recorded, so . . . Yes, Your Honor. Speaking into the microphone, it won't be recorded. I kind of got lost in my research. It's at page 318 of the plaintiff's appellant. All it does is grant your motion, so I guess we have to look at your motion for . . . Yes. . . . certification. Yes, that's true. And I think we have the motion right with it. I know the judge asked for the order, and I should have anticipated that. I don't see the motion here. It may be that the motion . . . It may be it's in the other volume. Sorry to interrupt. It's in the supplemental appendix at the intervener's file at page 60? Page 60 of the supplemental appendix. Thank you. Yeah. So, on page 60, it does say, the Hagnut claimants respectfully request that the court certify their innocent owner defenses to forfeiture for immediate appeal? Yes. So, it sounds like it's a request to certify as to the innocent owner defense. Yes, it is. But that's not where it stops, it seems to me. And so, let me see if I can turn to page 60 and put in the supplemental appendix filed by the interveners. They filed it in 152882. Is that the one you're referring to? I'm sorry, 3007. Oh, the 3007 supplemental appendix. Well, not to delay the court with this, but . . . Yeah, but the request for entry of final judgment, the first sentence is, familiarity of the facts and prior decisions of the court is assumed. Pursuant to 54B, the Hagnut claimants respectfully request that the court certify their innocent owner defenses to forfeiture for immediate appeal. Well, the innocent owner defense to forfeiture, Your Honor, gets interwoven constantly with the subject of the 153007 appeal because the court is saying that there is no judgment lien, and of course 153077 is saying that there is one. And then when I said that this was a collateral issue, and I thought perhaps it came within the beneficial finance rule, as I understand it, that it would be broad enough. But in the document itself, as we go through it, I think as I recall on the last page or so, we are again talking about the full range of issues here, and that is why I say that is the case, that the order is broad enough to encompass what we're doing, because I can't really entangle the issues in 153007 from what the court is doing with respect to its decision denying the innocent owner defense and granting summary judgment. I think my time has expired, Judge? Not quite. Oh, okay. You also have three minutes for rebuttal. Yes, thank you. When the red light goes on, that means you're out of time. All right. Anyway, briefly stated, the point I wish to make here is there is no expiration of this lien because of the protective order. The protective order makes it clear that you are not to encumber property, you are not to do the things that would be necessary to get a renewal lien under New York law, and that is where we stand on that. All right. We'll hear from the other side. Thank you, Your Honor. Good morning. May it please the Court, the Hegner's Rule 54b motion is clear and express. It is solely limited to issues raised on their innocent owner defense to forfeiture. In addition to the passage noted by Judge Chin on page 5 of the motion in supplemental appendix on page 64, the Hegner's state further, certification now will permit the court of appeals to deal one time only with all innocent owner defenses to forfeiture within the pending appeal in race 655th Avenue forfeiture proceeding, docket number 142027. It does not mention any of the issues that are being discussed in the appeal currently being taken in 153007. And as for Mr. Hegner's, I'm sorry, as for the Hegner's claim that these issues are now somehow intertwined with the issues raised in 152882, that was never an issue that was brief. They're not intertwined. There are two separate cases. There is a forfeiture case and there is a turnover case. Those are separate and independent actions. They raise separate and independent issues. Unless the panel has any questions, I'll otherwise rest on our brief. Thank you. Mr. DuPont-Rubato? I think we'll stand on our brief with this. I think we've covered the major points we want to cover with one exception, which I'd like to go back to just for a moment. It applies again in 153007, which is the question we have as to the jurisdiction of a United States court to forfeit foreign sovereign assets unless and until there is a provision for doing so under the Foreign Sovereign Immunities Act, which there is no such provision. In fact, the contrary is true. As this court has held in Weinstein, that contrary says, notwithstanding any other provision of law, the judgments of terrorism victims are to be enforced in the United States courts. I submit to your honors that what that plainly means to me, in language that the Congress used for the appropriate purpose of enforcing these judgments, that we are not to be bound down by the trappings of state law, which had some possible relevance to commercial transactions of domestic companies, has nothing whatsoever to do with the Foreign Sovereign Immunities Act, and it is to there that we should be looking for the requirements for a lien. And I suggest again that the parallel here is really the way you proceed to enforce any coet lien. I'm saying that that lien becomes coet the moment that we know that a lobby is an owner of that building. With that in mind, with respect to ARSA, which is still before the court below, it has not come up here on any 54B appeal or otherwise. So we can go ahead, we can enforce this judgment by a sale of that building, and 40 percent of that money can be made available to the victims of terrorism. But to do so, we need to proceed under that show cause order, and to enforce that judgment, we need only to have one thing. We don't need a lien, we don't need an attachment, but we do need a judgment. We've got that judgment, and we should be able to go forward in that show cause order, sell that building, and make those monies available to victims of terrorism, including my clients. Thank you. Thank you. We'll reserve the decision.